## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff/Respondent, ) | |
| ) | Case No. 08 C 5541 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| QUINTAS ROYAL, ) | |
| ) | |
| Defendant/Movant. ) | |

## MEMORANDUM OPINION & ORDER

Quintas Royal ("Mr. Royal") moves to vacate his sentence and conviction pursuant to 28 U.S.C. § 2255. Mr. Royal claims that the government violated his Sixth Amendment right to counsel by housing him in the Kankakee County Jail and that his trial counsel was ineffective. Mr. Royal requests an evidentiary hearing on his claims. For the reasons stated herein, the court denies Mr. Royal's request for an evidentiary hearing and denies his motion for a writ of *habeas corpus*.

### I. BACKGROUND

The factual background surrounding the underlying convictions Mr. Royal attacks is set forth in *United States v. Royal*, 244 Fed. Appx. 50 (7th Cir. 2007).[1]

In 2004, the Drug Enforcement Administration ("DEA") used a confidential informant to arrange for two sales of crack cocaine from Mr. Royal. The informant, Frederick Watkins, told Mr. Royal that his "man" wanted to buy "a couple ounces."

---

[1] The government prosecuted Royal under the first name "Quintus" because that is the official spelling of his first name on file with the Social Security Administration. In his 2255 motion, Mr. Royal identifies himself as Quintas.

Watkins and Mr. Royal negotiated a price for the drugs and Watkins made clear that he "want[ed] it rocked up."

A week later Watkins paid Mr. Royal the agreed upon price for two ounces of cocaine, which Mr. Royal had said that he "cooked . . . up" the night before. A few days later, Watkins, this time accompanied by an undercover Chicago police officer, made a second purchase from Mr. Royal. The government charged Mr. Royal with two counts of knowingly and intentionally distributing controlled substances, namely, mixtures containing crack cocaine, in violation of 21 U.S.C. § 841(a)(1).

During Mr. Royal's trial, his trial counsel challenged whether Mr. Royal had distributed crack cocaine or some other controlled substance. Robert Krefft, a DEA senior forensic chemist, testified about the chemical properties of the drugs sold by Mr. Royal. According to Krefft, the two tests indicated that the drugs contained cocaine base. Krefft also testified about the total weight of the drugs sold by Mr. Royal.

In addition to Krefft's testimony, the government played recordings of conversations between Watkins and Mr. Royal. The government then called an expert witness to explain the terms used in those conversations. Sergeant George Korinthos of the Chicago Police Department's Narcotics Section testified he had never heard the term "rock" used to describe drugs other than crack cocaine. In addition, another expert testified that the price agreed upon by Mr. Royal and Watkins was within the range of prices that was commonly charged for crack cocaine. Finally, multiple witnesses, including Watkins, the undercover police officer who accompanied Watkins, Chicago police officer Laurence Coleman, and narcotics expert Robert Coleman, all testified that the drugs appeared to be crack cocaine.

2

Mr. Royal offered no evidence in his defense. Rather, Mr. Royal cross-examined the government's witnesses about the differences between powder cocaine, crack cocaine, and other forms of cocaine base. During closing, trial counsel argued that the government had failed to prove that the drugs Mr. Royal sold to Watkins were crack cocaine.

During its deliberations, the jury inquired, among other things, whether it was "important to determine that it is a controlled substance or that it is crack cocaine? (as said in the indictment versus judge instructions)." The court instructed the jury that the law it must follow is set forth in the instructions and not the indictment. The jury found Mr. Royal guilty on both counts. The jury also returned the special verdict form finding that the government had proven beyond a reasonable doubt that Mr. Royal had delivered more than 50 grams of crack cocaine for both counts. The jury's finding on the special verdict form triggered a statutory mandatory minimum sentence of 240 months. Subsequently, the court sentenced Mr. Royal to two sentences of 240 months to run concurrently.

Mr. Royal appealed his conviction and sentence. He argued that the court erred in relying on the jury's special findings because the indictment, jury instructions, special verdict form, and the court's response to the jurors' inquiry confused the jury. The appellate court rejected Mr. Royal's argument, noting that the jury instructions given to the jury were correct and that Mr. Royal's argument that the special verdict form hopelessly confused the jury was speculative. Mr. Royal also argued that insufficient evidence supported his conviction. The appellate court rejected that argument as well, holding that it bordered on frivolous. Finally, Mr. Royal argued that the meaning of

3

"cocaine base" in 21 U.S.C. § 841(b) is unconstitutionally vague. The appellate court rejected Mr. Royal's final argument, holding that the methods used to identify crack cocaine were adequate in this case and the fact that other identification techniques might be insufficient was not material.

The appellate court denied Mr. Royal's petition for rehearing *en banc* on October 17, 2007. Mr. Royal elected not to petition the Supreme Court for a writ of *certiorari*. Royal filed this motion for relief under 28 U.S.C. § 2255 on September 29, 2008, less than a year after the expiration of time to file a petition for a writ of *certiorari*. The motion is therefore timely under 28 U.S.C. § 2255(f)(1). *Latham v. United States*, 527 F.3d 651, 652 (7th Cir. 2008).

## II. STANDARD OF REVIEW

Mr. Royal challenges his detention pursuant to 28 U.S.C. § 2255. Section 2255 is an extraordinary remedy because it asks the district court "to reopen the criminal process to a person who has already had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). The federal *habeas corpus* statute provides that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.
> 28 U.S.C. § 2255.

A district court may dismiss a 2255 motion without holding an evidentiary hearing if "the motion and the files and records of the case conclusively show that the

4

prisoner is entitled to no relief." 28 U.S.C. § 2255(b). In order to allege facts sufficient to receive an evidentiary hearing, a movant must submit a sworn affidavit with specific facts supporting the movant's assertion that he is entitled to relief. *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 7th Cir. 2006). The affidavit must be detailed and specific. Vague, conclusory or palpably incredible assertions are insufficient. *Id.* A district court may consider all the circumstances in the record in determining whether to grant a movant an evidentiary hearing. *Gallo-Vasquez v. United States*, 402 F.3d 793, 797 (7th Cir. 2005).

A collateral attack pursuant to Section 2255 is not a substitute for a direct appeal. *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2005). Unless a movant demonstrates changed circumstances in fact or law, a movant may not raise issues already decided on direct appeal. *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995). In addition, a movant procedurally defaults constitutional claims that could have been raised on direct appeal, but were not. *Torzala v. United States*, 545 F.3d 517, 522 (7th Cir. 2008). A movant cannot raise procedurally defaulted claims unless he can demonstrate: (1) cause and prejudice; or (2) that he is "actually innocent." *Id.*

### III. ANALYSIS

Mr. Royal raises two claims for relief. First, he claims he was denied his Sixth Amendment right to counsel because he was housed at the Kankakee County Jail during pre-trial proceedings. Second, he claims that he was denied his Sixth Amendment right to effective counsel.[2]

---

[2] Mr. Royal raises two ineffective-assistance-of-counsel claims. In addition, he raises numerous claims that his trial counsel was ineffective within his claim that housing him at Kankakee County Jail interfered with his Sixth Amendment right to counsel. Construing Mr. Royal's motion liberally, the Court deems these arguments to raise additional ineffective-assistance-of-counsel claims. *McGee v. Bartow*, 593 F.3d 556,

5

*A. Access to Counsel*

Mr. Royal argues that he was denied the right to consult with his trial counsel because the government housed him in the Kankakee County Jail during pre-trial proceedings. In support, Mr. Royal alleges that his trial counsel never visited him in the Kankakee County Jail and spoke with him for only 10-15 minutes each time Mr. Royal was brought to court. According to Mr. Royal, his inability to confer with his trial counsel caused trial counsel to be unprepared for trial.

The Sixth Amendment guarantees anyone accused of a crime the right "to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. The purpose behind the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. *United States v. Cronic*, 466 U.S. 648, 658-59 & n.25, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). The complete denial of counsel during a critical stage of the proceeding violates the Sixth Amendment, even without any showing of prejudice. *Cronic*, 466 U.S. at 659 & n. 25; *Geders v. United States*, 425 U.S. 80, 91, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976) (holding that court's order prohibiting counsel from consulting with client during overnight recess violated Sixth Amendment); *Tucker v. Randall*, 948 F.2d 388, 390-91 (7th Cir. 1991) (observing in *dicta* that denying pre-trial detainee access to telephone and counsel for four days would violate Sixth Amendment).

At the same time, "'[n]ot every restriction on counsel's time or opportunity to investigate or to consult with his client'" violates the Sixth Amendment. *United States v. Jones*, 808 F.2d 561, 570 (7th Cir. 1986) (quoting *Morris v. Slappy*, 461 U.S. 1, 11-12,

---

565-66 (7th Cir. 2010) (observing that courts have an obligation to construe *pro se habeas* petitions liberally).

6

103 S.Ct. 1610, 75 L.Ed.2d 610 (1983)) (denying ineffective assistance of counsel claim based on counsel's attempt to withdraw and defendant's belief that counsel had failed to have any meaningful communication with him). Thus, only where the circumstances surrounding the restriction upon a defendant's access to counsel justify a presumption of ineffectiveness is a Sixth Amendment claim sufficient without inquiry into counsel's actual performance. *Cronic*, 466 U.S. at 661-62 (holding that tardy appointment of counsel did not deprive defendant of his Sixth Amendment right to counsel where counsel performed adequately); *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932) (holding that appointment of counsel one day before trial deprived defendants of Sixth Amendment rights to counsel because counsel could not possibly have been prepared for trial). One district court in this circuit examined whether housing a pre-trial detainee in a remote location violates the Sixth Amendment and concluded that such procedures did not violate the Sixth Amendment absent any showing that the confinement caused counsel's performance to be deficient and that the deficient performance prejudiced him. *Falcon v. U.S. Bureau of Prisons*, 852 F. Supp. 1413, 1422 (S.D. Ill. 1994). Thus, unless a movant can demonstrate that his confinement at a remote location operated to deny him access to counsel, he must demonstrate that his confinement at a remote location prejudiced him by rendering his counsel ineffective.

Mr. Royal does not argue that his confinement at the Kankakee County Jail operated as a complete bar to his access to counsel. Mr. Royal does not claim that the government prevented him from communicating with his trial counsel. In particular, he makes no allegation that the Kankakee County Jail restricted his trial counsel's visitation privileges or that he was unable to speak privately with his counsel either in person or by

7

telephone. Rather, the crux of Mr. Royal's argument is that because the Kankakee County Jail is 65 miles from downtown Chicago, it was more difficult for counsel to visit him while he was awaiting trial (and, in fact, did not visit him at all). Because Mr. Royal does not allege that the government actually prevented him from consulting with his counsel, the mere fact that he was housed at the Kankakee County Jail during pre-trial proceedings is not a *per se* violation of his Sixth Amendment rights. Rather, Mr. Royal must demonstrate that he was prejudiced by his pre-trial detention. Accordingly, the court will examine Mr. Royal's claim in the context of his ineffective assistance of counsel claims.

### B. Ineffective Assistance of Counsel

To prevail on an ineffective-assistance-of-counsel claim, a movant must demonstrate that his counsel's performance was objectively unreasonable and resulted in a substantial risk of prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hutchings v. United States*, 618 F.3d 693, 696 (7th Cir. 2010). Failure to establish either prong is fatal to a petitioner's claim. *Gant v. United States*, 627 F.3d 677, 682 (7th Cir. 2010). Review of counsel's performance is highly deferential, and counsel is presumed to have acted effectively. *Hutchings*, 618 F.3d at 696. A court's review of counsel's competency must be deferential "[t]o reflect the wide range of competent legal strategies and avoid the pitfalls of review in hindsight." *Li v. United States*, 648 F.3d 524, 527-28 (7th Cir. 2011). In order to demonstrate that counsel's performance was deficient, a movant must provide evidence to overcome the presumption that trial counsel exercised sound reason for a strategic decision. *Smith v . Gaetz*, 565 F.3d 346, 352-53 (7th Cir. 2009).

1. Failure to Procure a Technical Expert

Mr. Royal first argues that trial counsel provided ineffective assistance because he failed to obtain the services of an expert witness to rebut the government's witness's testimony about the chemical content of the drugs. During Mr. Royal's trial, his trial counsel cross-examined the government's expert witness about the chemical content of the drugs that Mr. Royal sold. Although trial counsel did not challenge the expert's conclusion that the drugs were "cocaine base," he disputed that the expert could definitively conclude that the drugs were cocaine base in the form of crack cocaine. Trial counsel derived support for this theory of the defense from *United States v. Edwards*, 397 F.3d 570 (7th Cir. 2005). In *Edwards*, the Seventh Circuit held that in order to trigger the mandatory minimum pursuant to 21 U.S.C. § 841(b)(1)(A)(iii), the government would need to prove that "cocaine base" was crack cocaine, and not another form of cocaine base. *Edwards*, 397 F.3d at 577. Mr. Royal argues that had his trial counsel retained an expert witness, he could have created a reasonable doubt concerning whether the drugs at issue were crack cocaine or another form of cocaine base.

Mr. Royal's argument is based largely on speculation. He offers no evidence that trial counsel could have found an expert to testify that the drugs he sold were cocaine base but not crack cocaine. Nor does Mr. Royal offer any evidence that the drugs he sold were, in fact, not crack cocaine. Rather, he simply argues that trial counsel should have engaged an expert to testify on his behalf. Generally, a lawyer's decision to call or not call a witness is a strategic one. *Valenzuela v. United States*, 261 F.3d 694, 699-700 (7th Cir. 2001) (rejecting ineffective-assistance-of-counsel claim where defendant argued trial counsel should have retained expert chemist to testify that drugs were not crack cocaine

9

when evidence that the drugs were crack cocaine was overwhelming). Even when the government puts on its own expert witness, a defendant's lawyer has no duty to consult with or call a rebuttal expert. *United States v. Anderson*, 61 F.3d 1290, 1298-99 (7th Cir. 1995). In order to demonstrate that trial counsel's failure to consult with or call an expert constituted deficient performance, a movant must demonstrate that "an expert capable of supporting the defense was reasonably available at the time of trial." *Ellison v. Acevado*, 593 F.3d 625, 634 (7th Cir. 2010). A movant's speculation regarding the testimony of an unnamed expert witness is not sufficient to raise an ineffective-assistance-of-counsel claim. *Anderson*, 61 F.3d at 1298-99. Instead, a movant must put forward sufficiently precise information about the nature of the expert's testimony and the reason it would have made a difference. *Id.* Mr. Royal has not done so, and his argument that trial counsel was not effective because he failed to retain an expert is without merit.

Even putting aside the speculative nature of Mr. Royal's argument, he is not entitled to relief because *Edwards* no longer is good law. The Supreme Court recently held that "cocaine base" as it is used in 21 U.S.C. § 841(b)(1) "means not just 'crack cocaine,' but cocaine in its chemically basic form." *DePierre v. United States*, --- U.S. ---, 131 S.Ct. 2225, 2237, 180 L.Ed.2d 114 (2011); *Santiago v. United States*, 643 U.S. 1007, 1013 (7th Cir. 2011) (relying on *DePierre* to reject sufficiency of the evidence argument that government had not sufficiently proven the drugs at issue were crack cocaine and not just any form of cocaine base).

2. Failure to Allow Defendant to Testify

Mr. Royal next argues that trial counsel provided ineffective assistance by preventing him from testifying in his defense. All defendants enjoy the fundamental right

to testify on their own behalf. *Starkweather v. Smith*, 574 F.3d 399, 403 (7th Cir. 2010). The right cannot be waived without a defendant's consent. *Id.* Any waiver of the right must be made knowingly, voluntarily, and intelligently. *Id.* Incorrect advice that induces a waiver may constitute ineffective assistance of counsel. *Id.*

In his motion, Mr. Royal argues that he told his trial counsel that he wanted to testify and that his trial counsel "did not call [him] to testify as [he] had instructed." He further argues that the decision whether to testify was not trial counsel's decision, but his own and that trial counsel "deni[end] [him the] right to testify." In the affidavit in support of his motion, Mr. Royal states that whenever he wished to discuss his testimony with his trial counsel, trial counsel would advise him to "see how it goes." Mr. Royal explains that his trial counsel "refused to call [him] to testify" and claims that he believed his trial counsel "at some point would call [him] to testify."

A colloquy between the court and Mr. Royal, however, reveals that trial counsel did not, in fact, prevent him from testifying and that the court afforded Mr. Royal the opportunity to take the witness stand if he so wished. At the conclusion of the government's case, the defense rested. The court then advised Mr. Royal that it was his right to decide whether he wished to testify. The court inquired of Mr. Royal whether he agreed with his trial counsel's decision not to present his testimony. Mr. Royal answered that he agreed with the decision. (Tr. 288-89).

Faced with the transcript that contradicts his claim, Mr. Royal raises a new argument in his reply. In reply, Mr. Royal explains that the only reason that he agreed with trial counsel's decision not to present his testimony was his trial counsel had not prepared him to testify. Mr. Royal explains that had the court asked him whether he

11

wished to testify and not whether he agreed with counsel's decision not to present his testimony, he would have answered, "yes." Mr. Royal argues therefore his waiver was neither knowing nor voluntary. Although there is some support for Mr. Royal's argument within his affidavit where he claims that trial counsel "never discuss[end] what [his] testimony should consist of," he never fully presents such an argument in his motion. A movant waives arguments raised for the first time in a reply. *United States v. Harris*, 394 F.3d 543, 559 (7th Cir. 2005). Even construing Mr. Royal's motion liberally, it is clear that the gravamen of his claim is that trial counsel prevented him from testifying and not that he provided inadequate advice regarding whether to testify. Consequently, the court finds that Mr. Royal has waived any argument that counsel provided ineffective assistance by failing to prepare him to testify.

Even if Mr. Royal had not waived his claim that trial counsel provided ineffective assistance by failing to prepare him to testify, Mr. Royal's argument is more semantic than legal and is not convincing. The Seventh Circuit has noted that it is extremely common for defendants not to testify. *Underwood v. Clark*, 939 F.2d 473, 475 (7th Cir. 1991) (noting that defendants often exercise their right to remain silent for good reason to avoid potentially damaging testimony). The Seventh Circuit further noted that it is "too facile a tactic" to allow a barebones assertion that a lawyer refused to allow the defendant to testify to result in the grant of a new trial. *Id.* at 476. Rather, a defendant or movant must provide something concrete to demonstrate that a waiver of the right to testify was not knowing or voluntary. *United States v. Stark*, 507 F.3d 512, 518 (7th Cir. 2007); *Ward v. Sternes*, 334 F.3d 696, 707 (7th Cir. 2003); *Underwood*, 939 F.2d at 476. In *Ward*, for instance, the defendant demonstrated mental deficiencies that undermined his

ability to understand the nature of his right to decide whether to testify. The colloquy between the defendant and the court indicated the defendant was hesitant to waive his right to testify. *Ward*, 334 F.3d at 706-08. Accordingly, the court held that an "unwitting cooperation with counsel" does not create a knowing and voluntary waiver. *Id.*

The record demonstrates that is not what happened in this case. Instead, Mr. Royal indicates that he understood prior to trial that he wished to "tell my side of the case to the jury." The court afforded him that opportunity, and Mr. Royal declined to take it or to voice any disagreement over his trial counsel's strategy. Mr. Royal points to nothing concrete, such as a mental deficiency, to make the waiver of his right to testify involuntary or uninformed. Accordingly, even if the court were to consider the arguments Mr. Royal raises for the first time in his reply brief, he fails to state a constitutional claim for relief.

3. Cumulative Trial Counsel Errors

Finally, Mr. Royal embeds numerous claims about his trial counsel's ineffective performance within his argument that the government's decision to house him at a remote location violated his Sixth Amendment rights. As noted earlier, the court construes these arguments as a claim that being housed in a remote location interfered with his trial counsel's ability to defend him. Specifically, Mr. Royal claims that trial counsel was ineffective in: (1) failing to object to his confinement at Kankakee County Jail; (2) failing to obtain an expert witness; (3) failing to prepare him to testify; (4) failing to exclude a government agent who would testify at trial or effectively cross examine him after his testimony; (5) presenting no defense; (6) failing to object when the court "rushed" jurors' deliberations in order to keep an appointment; (7) failing to object when a

13

different judge received the verdict; (8) failing to object when a court clerk responded to a jury question or to object to the court's response to a jury question; (9) making sentencing errors; (10) being unprepared. Mr. Royal fails to develop any of these arguments beyond listing them within his argument regarding the location of his confinement. Even in his reply, Mr. Royal elaborates no further, arguing only that the "cumulative impact of [trial counsel's] errors prejudiced" him and that "most of the errors are very serious."

A movant waives arguments that he fails to support or develop. *United States v. Turcotte*, 631 F.3d 515, 536 (7th Cir. 2011). A court may dismiss claims that are cursory and undeveloped without reaching the merits. *Id.* Mr. Royal fails even to describe minimally the reason why his perfunctory list of errors constitutes deficient performance or why such errors prejudiced him. Rather, he simply lists the claims. Because Mr. Royal's arguments are entirely undeveloped, the court denies any claim that cumulative errors by trial counsel amounted to ineffective assistance of counsel or that being housed at the Kankakee County Jail interfered with his counsel's ability to defend him.

Even if the court were to look to the merits of Mr. Royal's laundry list of errors, it is clear that his claims lack merit. The court has addressed Mr. Royal's claims that counsel should have procured an expert witness and prepared him to testify and they are redundant here. In addition, the court has rejected Mr. Royal's claim that being confined at the Kankakee County Jail *per se* violated his Sixth Amendment rights, and counsel's failure to object to that confinement cannot support an ineffective-assistance-of-counsel claim absent any showing that his confinement rendered his trial counsel ineffective. The remainder of Mr. Royal's claim border on frivolous.

Trial counsel's failure to object to the presence of the government agent at trial counsel is not error at al. Government agents essential to the government's case, including the case agent, are allowed to sit at counsel's table. Fed. R. Evid. 615(a); *United States v. Berry*, 133 F.3d 1020, 1024 (7th Cir. 1998). That agent's testimony covered only five transcript pages, and established the chain of custody for the recordings made of the transaction between Mr. Royal and Watkins. Given the limited nature of that agent's testimony, unless Mr. Royal could produce some evidence challenging the chain of custody for those recordings, any cross-examination would have been pointless and counsel's failure to cross-examine the agent was not error.

Others of Mr. Royal's claims either are completely unsupported or simply wrong. For instance, Mr. Royal claims that the court's clerk answered a jury question. The court, however, took numerous questions from the jury and put every discussion and answer on the record. (Tr. 341-356). Mr. Royal also claims that the court rushed the jury to keep a medical appointment. Rather than rush the jury, the court instructed the jury to continue deliberating. (Tr. 357-360). It simply is not error for another judge to receive the verdict, and counsel was not ineffective in not objecting to that practice. Even if it were, it could not possibly have prejudiced Mr. Royal. A successful objection to the verdict being received by another judge would not have changed the result of the jury's verdict; it merely would have delayed the court's receipt of the verdict. Mr. Royal's claim that trial counsel made sentencing errors is frivolous given that the court sentenced him to the statutory mandatory minimum sentence.

Mr. Royal has not demonstrated that the distance between him and his trial counsel created any prejudice or that his trial counsel committed any error, let alone one of such magnitude that it prejudiced him.

### III. CONCLUSION

None of Mr. Royal's claims have merit. Mr. Royal's confinement at the Kankakee County Jail did not violate his Sixth Amendment right to counsel *per se* and Mr. Royal did not demonstrate that his remote confinement interfered with his trial counsel's performance. In addition, Mr. Royal's claims that his trial counsel's performance was deficient lack merit. The court therefore denies Mr. Royal's motion to vacate his conviction and sentence.

Pursuant to 28 U.S.C. § 2253, the Court must determine whether to issue a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). The court may issue such a certificate only if the applicant has made a substantial showing of the denial of a constitutional claim. 28 U.S.C. § 2253(c)(2). A "substantial showing" is one that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). No reasonable jurist could conclude that being housed approximately 60 miles away from the court violates the Sixth Amendment *per se*. In light of Mr. Royal's failure to develop any argument regarding the impact of his confinement on trial counsel's performance, no reasonable jurist could conclude that his confinement at the Kankakee County Jail rendered his trial counsel ineffective. Similarly, no reasonable jurist could conclude that his trial counsel was

16

ineffective in failing to employ an expert witness when Mr. Royal neither names an expert who could have testified on his behalf nor identifies the potential substance of that expert's testimony. Finally, no reasonable jurist could conclude that Mr. Royal did not knowingly and voluntarily waive his right to testify upon review of the colloquy between the court and Mr. Royal. The Court therefore declines to issue a certificate of appealability.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: April 30, 2012

17